We move to the next case, which is Fair v. Saul. Council are ready. Mr. Forbes, you can take your, well, I don't know if you have other people there with you? I have a legal assistant with me, Your Honor, so I'll leave it on as long as you can hear me okay. We can hear you all right, so go ahead. Thank you. My name is Randall. Are we ready to start? Yes. Okay. I'm Randall Forbes. I represent the claimant in this matter, the Social Security Disability Claimant, and may it please the Court, the arguments, I'll just start with my, the critique of the arguments on the other side, because this is a, in one sense, this is a typical case where the other side, oh, it's subjective reporting on the basis of the claimant, and therefore the doctor's opinion can be discounted or ignored. This is not a case of subjective opinion or reporting of a patient that the doctor then records like a stenographer into an opinion. This is a valid diagnosis, failed back syndrome, which arose because back surgery, although it helps many, does not help everyone. I believe the last time I researched it, about a fourth of the people do not experience adequate pain relief from back surgery. So the diagnosis of failed back syndrome or post-laminectomy syndrome made it into the orthopedic and neurological professions, and as the pain management specialty developed, pain management had a role in addressing the problems. So it's not like just a mere pain case where somebody says, my arm hurts, and there's no medical basis. The medical basis for the pain of this diagnosis was the objective pain that was identified by orthopedic doctors through objective testing, which was done in this case, and attempt to relieve that pain by surgery, and the surgery failed. So it's not just the client talking about the pain. The pain's already been objectively identified by the objective test done pre-surgery. The failure to address the pain or the failure for the pain to go away is confirmed by specialist post-surgery, and again, in this case, the pain management person worked in the orthopedic practice. I believe he was an anesthesiologist by specialty with some subspecialties in relevant experience, but this is the pain specialist is the person that is filtering the communication from the patient. He's a person that's observing the patient. He's a person that is specifically trained to listen to the patient's descriptions of pain and then evaluate whether those descriptions are consistent with the source of the pain, and in this case, the source of the pain is, again, what was identified pre-back surgery and was not addressed post-back surgery. So to say that it gets thrown out because it's a subjective report of the patient is not consistent with the science nor what's going on. I think I will reserve the rest of my time for rebuttal unless there's questions. Mr. Forbes, could I just ask very briefly, Mr. Forbes, to make sure in this case we're operating under the old regs with the greater obligation to give weight to treating sources? That is correct, Your Honor. Okay. I'm of the general opinion that whether we have any regs, the logical bridge doctrine would require the same sort of weighting analysis, and the logical bridge doctrine originates from the Supreme Court during the, well, I don't need to say that I cited it, so thank you. Thank you. Thank you, Mr. Forbes. Mr. Mervis? May it please the Court, David Mervis on behalf of the Commissioner. In asking this Court to disturb the Commissioner's final decision and to reverse the District Court's affirmance of that decision, Ms. Fair focuses on one opinion in a record of over 1,400 pages. The ALJ, on the other hand, discussed and weighed 13 different opinions, including this one that Ms. Fair draws her attention to, which is an opinion from Ms. Fair's pain management. I'm sorry. I thought there was a question. My apologies. So the ALJ provided good reasons for the weight that he gave to this opinion, and Ms. Fair hasn't demonstrated error in this analysis. Recognizing that, the District Court found that or explained that Ms. Fair's argument fails on multiple levels. That's Appendix 11. Ms. Fair makes the same argument here, providing no explanation for how the evidence actually supports Dr. Barr's opinion. So a general status as a treating physician, as a pain management doctor, and a general sense of the way that pain works generally isn't evidence in this case. So the opinion at issue, of course, is the June 2015 questionnaire from Dr. Barr. The ALJ discussed that opinion twice. So at the bottom of Appendix 27, the ALJ sets out what Dr. Barr said, and then in the middle of Appendix 33, the ALJ returns to the opinion as one of the, like I said, 13 opinions that the ALJ specifically discusses. The ALJ notes Dr. Barr's treating relationship with Ms. Fair, but explains why the opinion isn't due significant weight. And it's, as the District Court recognized, as the District Court explained, because it's not well supported by Dr. Barr's own treatment notes. So there's contradictions at the ALJ notes between Dr. Barr's opinion and his contemporaneous treatment notes. So it's not a situation where, as counsel has argued, where Dr. Barr himself is being consistent. That's the ALJ's assessment. So in what the ALJ notes is a one month before Dr. Barr issues this opinion in June of 2015. So the May 15 visit that Ms. Fair has with Dr. Barr, there are no The ALJ cites it at Appendix 33. The month after Dr. Barr issues his opinion, there's no other objective findings beyond one note of an antalgic gait. And again, Dr. Barr encourages activity. A couple months later, Ms. Fair demonstrates a normal gait, and in fact, full motor strength. That's at Appendix 33. The ALJ notes that finding in September that appears the record at 863. A few months before this. Toward this end of this analysis of the ALJ discounting Dr. Barr's opinion in part, how many reasons must be given? Is it just one good reason or is it a number of good reasons? Because it appears that here, Dr. Barr's opinion was at least partially persuasive, but not fully persuasive. It seems like we're in this position of assessing whether or not the reasons the ALJ gave for discounting Dr. Barr's opinion were good. So I guess my question goes to quantum or a qualitative analysis of the reasons given? Yeah, I would certainly not say that there needs to be a certain number of reasons. The answer is that the ALJ needs to explain where he is on this. And so what the ALJ does here is provide several reasons. So we've got contemporaneous treatment notes. And the other aspect the ALJ specifically identifies is the side effects that Dr. Barr includes in his opinion were consistently not noted in the record. So the ALJ gives a couple of reasons. It's certainly the case that Dr. Barr is a treating source. And so if his opinion were fully persuasive, he could be given controlling weight. So the reason I say that is because what the ALJ is doing is explaining, I'm not giving controlling weight to this opinion, which might otherwise be due to the status. And so, yeah, I'm going to give it some weight. So this is not a complete rejection. This is not an indication that Dr. Barr had no idea what he was talking about. But it's an indication and it's an explanation that his treatment notes just didn't show the kind of severity, didn't reflect the same severity that his opinion did. So that's the source that the ALJ identifies is Dr. Barr's own treatment notes. If his treatment notes had consistently reflected the same kinds of limitations that he included in his opinion, the ALJ would have come to a different conclusion. I think, again, as I indicated, side effects is another, is one of the compelling aspects here. We've set out in our brief at page 18 the references, the numerous references that the ALJ makes in his opinion to the lack of side effects, to Ms. Fair reporting a lack of side effects. So I won't repeat all the page sites but I'd point the court to our brief at page 18. And yet the ALJ looks at Dr. Barr's opinion and sees that these side effects, according to him, would significantly limit how Ms. Fair is able to work. So the ALJ is entitled to discount the opinion on those bases, the support that Dr. Barr offers for his opinions, both within that form and without. And then the consistency of his record. Let me ask you a quick question. Your brief refers to a portion of the record in May of 2016 where Ms. Fair reported to Dr. Barr that she was able to return to work. Is that right? That's right, Your Honor. There is a period. That's an unusual feature of a record like this. It is, Your Honor. This is a lengthy period of time. We've got about six years that the ALJ is considering. And I believe Ms. Fair was able to return to work, albeit unsuccessfully, ultimately twice. I think there's a 2013 period of time and there's a 20... Was that referring to her work as an LPN? Yes, that's right. And so in 2016, there's several month period where Ms. Fair returns to work. There is a human resources expert who gives a certification that she was at work. There's every indication that the physical requirements of that work was too demanding for her. She did not stay at that job more than a couple of months. And so that doesn't defeat her claim. But again, we're talking about what the human resources officer indicates is that she was lifting up to 50 pounds. The ALJ finds her capable of light work, which is a lesser exertional level. And so that is part of the equation. It's certainly part of the record. But the ALJ isn't holding that against her in a sense that she can do any work. She's lying about her complaints. It's simply part of the record. It also speaks of her motivation to return. It does. Absolutely, Your Honor. And Ms. Fair should be commended, of course. And the ALJ isn't, again, holding that against her. It may be, and in most of these cases, it is that an individual isn't physically or mentally, in this case, physically able to return to past work. It doesn't mean, of course, that the individual is disabled under the Act. So what I'd, again, point to is, unless this court and the panel has any other specific questions, I'd point to the ALJ's careful consideration of the 1,400-page record in this case, the specific discussion of 13 opinions. And here, Ms. Fair has shined a spotlight on one. But there are simply no, there are no records. There is no evidence that specifically supports Dr. Barr's opinion. And so the ALJ considers that opinion, notes the discrepancies between Dr. Barr's treatment notes and the opinion that he renders from the same period of time. There's simply no reason to disturb the ALJ's assessment of that opinion and, in turn, the ALJ's final decision in this case. And so for that reason, we'd ask that the Commissioner's final decision be affirmed, the district court's decision be affirmed, and this court render judgment to that effect. Thank you. Thank you, Mr. Rivers. Mr. Forbes? Yes, Your Honors. It matters not that there were 13 other opinions. The Treatings Relevant Specialist with a Long Treating Record issued the critical opinion, and that's what counts here. The idea that a person under multi-year pain management has to be consistent in their reporting is a, that's a fallacy. The fact is the treatment modalities, the different types of medications, the injections that pain management specialists use provide some relief from pain, sometimes for a short while, sometimes for a long while. Sometimes the medications wear out, and new medications have to be tried. It's inherent in this treatment process that the reporting of the pain and the effectiveness of the treatment regimen are going to wax and wane. If the pain medications worked to the point of providing meaningful relief, they wouldn't need to go back to the pain management doctor all that often. They just need to double-check prescriptions every now and then, maybe take a drug test because of the seriousness of the medications. So, it's a fallacy, especially under this record, that the treatment notes are inconsistent and therefore the pain management's opinion should be discounted. That's not what's going on here. What I think's going on is just a misunderstanding on the basis of the administrative law judge, and to some extent the district court judge, as to what the diagnosis of Baileback syndrome is, what pain management specialty does. And, you know, I always like to say something about the disability claimant on a personal note. This person wanted to be a nurse, and she tried, and even going back and trying to start again with pain during the midst of this pain management treatment. It might have been wishful thinking, but it reflected her desire to follow her calling. So, that's important. And then back to the subjective-objective dichotomy again. The objective medical evidence is all of the imaging and testing done that showed that the surgery was necessary. Because you don't do the surgery unless there's a necessity to relieve severe back pain. The surgery failed. I think it was confirmed not only by our orthopedic physician, but by the pain management specialist. We got the right bower here for those of you who play euchre. I don't play it much, but I played it a lot, so I know a little bit about it. But we have the right bower, and they have nothing. So, we would appreciate your careful consideration. Thank you. Thank you, Mr. Forbes. Thank you, Mr. Mervis. Thanks to both counsel, and we take the case under advice.